# Hartford Fire Insurance Co. v. Kirkpatrick, Dunn & Co.

*Action on a Fire Insurance Policy.*

1. *Avoidance of a contract of settlement of an insurance policy; false representations; sufficiency of replication.*—Where a contract in settlement of liability under an insurance policy is sought to be avoided by reason of false and fraudulent representations, it must be shown, as in other contracts, that the person seeking the avoidance relied upon the truth of such representations and was induced thereby to enter into the contract; and, hence, where in an action on an insurance policy the defendant pleads payment and settlement of the claim and surrender of the policies, a replication to such plea, which sets up in avoidance of the settlement pleaded that it was procured by false and fraudulent representations, is insufficient and demurrable if it does not aver that the plaintiff relied upon the truth of such representations and was induced thereby to make the alleged settlement and surrender the policy.

2. *Same; duress.*—Where a contract is sought to be avoided on the ground of duress of actual imprisonment, it must be shown that there were threats made to continue an imprisonment already begun of the person seeking the avoidance unless the contract was entered into, and that such contract was finally acceded to in order to obtain his release from such imprisonment.

3. *Same; same; sufficiency of replication.*—When in an action on an insurance policy, the defendant pleads settlement of all liability under the policy and a surrender of the policy, and by replication the plaintiff sets up, in avoidance of the settlement and surrender

[Hartford Fire Insurance Co. v. Kirkpatrick, Dunn & Co.]

pleaded, that it was obtained by duress of actual imprisonment, such replication, in order to be sufficient, must allege that there were threats made to continue an imprisonment, already begun, of the plaintiff unless the alleged settlement and surrender were acceded to, and that such arrangement was finally yielded to in order to obtain his release from such imprisonment.

4. *Duress from threats of imprisonment; immaterial whether of unlawful or lawful imprisonment.*—It is not necessary that threats of imprisonment, to constitute duress which will avoid a contract, should be of unlawful imprisonment; but if a person making a contract is liable to arrest and imprisonment, and such liability is used as a threat to overcome his will and compel him to make the contract, which he would not have made voluntarily, it will amount to duress entitling him to avoid such contract; the question in all such cases being, whether his liability to imprisonment was used against him by way of threat to compel him to make the contract, and if the threats were such as would naturally overcome the mind and will of an ordinary man, and did overcome his will.

5. *Same; not necessary to tender amount received in order to avoid contract.*—Where a person holding an insurance policy is compelled by duress to accept a sum less than is justly due him on the policy in satisfaction of his claim and to surrender the same, in order to maintain a subsequent action on the policy, it is not necessary that he should return or tender the money so received by him.

APPEAL from the City Court of Montgomery.
Tried before the Hon. THOMAS M. ARRINGTON.

This was an action brought by Kirkpatrick, Dunn & Co. against the Hartford Fire Insurance Company, to recover the amount of a loss by fire, covered by a policy of insurance issued by the defendant.

The defendant pleaded by its third and fifth special pleas payment and satisfaction of the claim, and that the cause of action by the plaintiff had been settled for $25, paid by the defendant and accepted by the plaintiffs in satisfaction of their demand, and that the policy was assigned and relinquished by the plaintiff to the defendant before the commencement of the suit. To these pleas the plaintiffs filed the following replication: "Comes the plaintiff and sayeth that by reason of the third plea and plea filed Oct. 29th, 1891 (No. 5), or anything in said plea alleged, they ought not to be barred from having and maintaining their aforesaid action against said defendant, because they say: That on, to wit, April 30, 1891, said defendant was indebted to plaintiff in the sum of $500. That said plaintiffs' loss by fire had been in-

vestigated and adjusted by defendant, and that said sum had been agreed upon as the loss sustained by plaintiffs, covered by the policy issued by defendant. That on, to-wit, April 30, 1891, one J. B. McDonald, an agent of defendant, wired J. F. Kirkpatrick at Garland, Ala., to meet him at Montgomery, and to bring with him the policy of insurance; that in compliance with said request said Kirkpatrick came to Montgomery, Alabama; that said McDonald requested said Kirkpatrick to accompany him to his room; that McDonald locked the door, and requested plaintiff to produce the policy of insurance, said policy being the foundation of this suit. That said McDonald then stated in substance, that plaintiffs had burned their store and the goods therein contained. That he could prove it. That Dunn, one of the plaintiffs, was seen to surreptitiously remove goods from said store, just previous to the fire. That said Dunn had burned said store for the purpose of securing the insurance. That he would have Dunn arrested at once and send him to the penitentiary. That he would have said Kirkpatrick arrested at once, without delay, incarcerate plaintiffs, and have a special term of the circuit court of Butler county convene for the purpose of trying plaintiffs. That he represented large corporations and could do anything he desired. Plaintiff, said Kirkpatrick, implored said McDonald to allow him an opportunity to see his partner Dunn, and inquire into the allegations and charges made by said McDonald. That said McDonald positively and peremptorily refused to grant time, but demanded the policy of insurance, said that his company required an immediate settlement and delivery of the policy. That it was dangerous to have said policy of insurance in his possession. That he, plaintiff, must comply with his demand. It was a matter of dollars and cents on the one side, and freedom and liberty on the other. But if plaintiff would deliver the policy he would give him $25. This was to reimburse him for expenses in coming to see him. That he then wrote something on the back of said policy of insurance and requested plaintiff to sign same, and if he did not he would execute threats as aforesaid. That while bewildered, overpowered and frightened by said threats and charges as aforesaid he signed same and received the $25, although said defendant was really indebted to the plaintiff in the sum

of $500.  That the plaintiffs have heretofore, previous
to the commencement of this suit, tendered to the de-
fendant said sum of $25 paid as aforesaid by said Mc-
Donald, and requested the return of said .policy.  That
said request and tender were refused. And plaintiff avers
that said charges and allegations as aforesaid made by
said McDonald were false, and m .de for the purpose and
design to fraudulently obtain said policy of insurance
from plaintiff.  That by reason of said false and fraudu-
lent representations and threats as aforesaid, said Kirk-
patrick was misled, frightened, deceived and inveigled
into the relinquishing said policy of insurance as afore-
said.  That plaintiff, said Kirkpatrick, was absent from
Garland at the time said store-house was burned, knew
nothing of the particulars other than hearsay, and had
no personal knowledge of the facts.  That apprehending
said McDonald would execute his threats as aforesaid,
or inflict upon plaintiff great bodily harm, he executed
said release as aforesaid, and plaintiff avers that he is,
and was, a stranger in the city of Montgomery and ignor-
ant and unsophisticated in the arts and devices of the
world.  That said McDonald is a large man of seeming
great physical power, that said plaintiff is of fragile phys-
ical formation, and was unprepared to cope with said
McDonald, and that said conversation and action on the
part of said McDonald occurred during the midnight
hours of April 30, 1891, in the room of said McDonald,
lighted by the dim flicker of a lowered gas jet.  Where-
fore plaintiffs pray judgment, and their debt aforesaid,
together with other damages they sustained by reason of
the detention thereof to be adjudged to them."

Subsequently this replication was amended by alleg-
ing that plaintiffs, previous to the commencement of the
suit, tendered to the defendant the sum of $25, and that
they had been ready at all times since then to pay the
same over, and had paid it into court.

To this replication the defendant demurred upon sev-
eral grounds, which may be summarized as follows :
First.  That the replication did not aver in what way the
facts stated influenced or induced the execution of the
indorsement upon the policy ; and, second, it did not
show that the indorsement thereon was an unlawful
indorsement. · To so much of the replication as set up
that the agent of the defendant had said to Kirkpatrick

that plaintiffs had burned their store, and that he could prove it, the defendant demurred upon the following grounds: 1st. That the facts did not show either fraud or corruption. 2d. That it did not appear that the plaintiffs were misled or deceived thereby. 3d. That it did not appear that Kirkpatrick did not know at the time that the statements were untrue. 4th. That it was not shown wherein the statements were untrue. There was also a special demurrer to that part of the replication setting up that the assignment was obtained by duress, and the grounds were substantially as follows: 1st. It was not shown that plaintiffs, or either of them, were threatened with illegal arrest or prosecution. 2d. That it was shown that the threats were to prosecute the plaintiffs by law and in the courts of the country. The same grounds of demurrer assigned to each separate portion of said replication were also separately assigned to the replication as a whole. The court overruled the demurrers, to each of which rulings defendants separately excepted, and thereupon the defendant took issue on the replication.

Upon the question of duress in obtaining the release, Kirkpatrick, as a witness in behalf of the plaintiff, testified to facts tending to prove the averments of the replication, and also testified that after the receipt of the $25 and the execution of the release, and before the commencement of the present suit, he offered to pay the $25 back to the defendant. McDonald was the only witness examined in behalf of the defendant upon the question of the execution of the release, and his testimony was to the effect that he did not threaten Kirkpatrick with imprisonment, but did tell him that he had heard that there was something crooked about the fire, and that his opinion was that Dunn, Kirkpatrick's partner, had set fire to the store, and that under these circumstances his policy was worth nothing, and that his company proposed to investigate the matter, and if found true, would prosecute the guilty party. That after an hour and a half conversation with Kirkpatrick he proposed to settle the matter, and as a result of his conversation he paid Kirkpatrick $50, and thereupon Kirkpatrick executed the release and transfer, which was indorsed on the back of the policy.

Upon the introduction of all the evidence the court in-

structed the jury "that if they believed Kirkpatrick executed the release from fear, that if he was deprived of the exercise of his free will, that it was from fear of an immediate prosecution for arson produced by the conduct and threats of McDonald, and they were such as to overcome the will of a person of ordinary courage, and if they further believe that the consideration was grossly inadequate, then plaintiffs would not be bound by the release." To this portion of the court's general charge the defendant duly excepted, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "If the jury believe all the evidence in this case they will find a verdict for the defendant." (2.) "If the jury believe from the evidence that plaintiff Kirkpatrick signed the transfer indorsed on the policy of insurance in evidence, then they must find a verdict for the defendant." (4.) "If the jury believe from the evidence that Kirkpatrick agreed with McDonald, the agent of the defendant, to accept twenty-five dollars in full payment for the policy of insurance, that thereupon McDonald paid said Kirkpatrick said sum of twenty-five dollars, Kirkpatrick then signed the transfer and assignment indorsed on the back of the policy and delivered the same to McDonald, they must find for the defendant." (6.) "Unless the jury are satisfied from the evidence that McDonald threatened Kirkpatrick with an immediate arrest, unless he signed the written transfer and assignment, given in evidence, and further made statements to Kirkpatrick which would have caused a reasonable man to believe that he had already instituted prosecution against him, or had means at hand whereby such prosecution could be immediately commenced and Kirkpatrick arrested, then there was no such duress as will authorize the jury to find that such written transfer or assignment was obtained under such circumstances as to make the same void, and they will find a verdict for the defendant." (8.) "Before the jury can find a verdict for the plaintiffs in this action they must believe from the evidence that before the commencement of this suit, the plaintiffs tendered to the defendant or to some other person authorized by the defendant to act for it in the premises, the amount of money paid upon the execution of the assignment or transfer, given in evidence, and offered to rescind the said contract."

(9.)   "If the jury believe from the evidence that prior to the commencement of this suit, plaintiffs tendered to some person the $25, the amount paid by McDonald to Kirkpatrick upon the execution of the written transfer and assignment indorsed upon the policy given in evidence, then they must find a verdict for the defendant, unless they are further satisfied from the evidence that the person to whom such money was tendered was an agent of the defendant; and if there is no evidence that the tender was made to an agent of the defendant, then the jury must find a verdict for the defendant."

There were verdict and judgment in favor of the plaintiffs. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

TOMPKINS & TROY, for appellant.—1.   The only duress to which it is pretended Kirkpatrick was subjected was "*duress per minas.*" Not every contract entered into under the influence of a threat can be avoided, but only those entered into under the influence of threats reasonably calculated to excite a fear of great bodily harm, or of an unlawful imprisonment, which the party making the threats is reasonably supposed to have the means of carrying into present execution. 1 Parsons on Contr., mar. p. 393; 6 Amer. & Eng. Encyc. of Law, p. 64.

2.   The only reasonable conclusion any reasonable man could have reached from what McDonald said, taking as true Kirkpatrick's version of what he said, was that he intended to prosecute Dunn in the courts, and perhaps that he also intended prosecuting Kirkpatrick. But this latter apprehension is hardly consistent with his whole statement, because he testified that McDonald started the conversation by stating that he, Kirkpatrick, had been duped by Dunn, and at no time intimated that he thought he had anything to do with the fire. This was not a threat of unlawful imprisonment.—*Buchanan v. Sahlein*, 9 Mo. App. 552; *Wolf v. Marshal*, 52 Mo. 171; *Bodine v. Morgan,* 37 N. J. Eq. 426; *Eddy v. Herrin*, 35 Amer. Dec. 261.

3.   We have found no authority which holds that a mere threat to constitute a criminal prosecution against

a person is duress. All the authorities agree that the threat must be such as to put the person in fear of an immediate arrest and an unlawful imprisonment. Under the charge of the court, the jury would have felt bound to hold the release void, even though the only threat was to institute a prosecution in event grounds for so doing were found upon investigation. No one could hold this to be the law.—*Higgins v. Brown*, 78 Me. 473 ; *Landa v. Obert*, 45 Texas 539 ; *Plant v. Gunn*, 2 Woods, 372.

.4. The evidence on the part of defendant tended to establish a hypothesis which showed that there was no element of duress exercised by the agent of defendant inducing the execution of the release. If the jury believed that hypothesis, it was their duty to find for the defendant. The fifth charge asked by defendant was based upon that hypothesis, and should have been given.—*Griel v. Marks*, 51 Ala. 566 ; *Bibb v. Mitchell*, 58 Ala. 657.

5. In a case like the present, where defendant claimed it was not liable at all, not even for the twenty-five dollars, it is clear plaintiffs could not repudiate the settlement so long as they kept the money defendant had paid them. If they desired to rescind the contract of settlement they must restore defendant to the position it occupied before the settlement was made. They could not say to it "we will keep your money that you paid, but repudiate the contract under which it was paid." Then, they had no right of action against plaintiffs until the money was tendered back, and this is recognized by the replication wherein they averred they had tendered it back.—21 Amer. & Eng. Encyc. of Law, 84. The charges asked by defendant on this point should have been given. There was really no evidence of tender to defendant.— *Jones v. Anderson*, 82 Ala. 302 ; *Evans v. Gale*, 43 Amer. Dec. 614.

CHARLES WILKINSON, *contra*, cited *Insurance Co. v. Hull*, 25 L. R. A. 37 ; *United States v. Huckabee*, 16 Wall. 414 ; *Hatter v. Greenlee*, 26 Amer. Dec. 371.

BRICKELL, C. J.—Appellees brought suit against the appellant to recover the amount of a loss from fire covered by a policy of insurance issued by appellant to

appellees on their stock of merchandise. The defendant (appellant) filed a general denial of indebtedness and of each allegation of the complaint; also pleaded payment and that the cause of action had been settled for $25 paid by the appellant to appellees and accepted by them in satisfaction of their demand, and that the policy of insurance was assigned and relinquished by appellees to appellant before the commencement of the suit. To the last two pleas the plaintiffs filed a replication which undertakes to set out in much detail that the settlement and the surrender of the policy was procured from Kirkpatrick, one of the partners in appellees firm, by one McDonald, an agent of the defendant, by means of false and fraudulent misrepresentations and duress by threats of arrest and imprisonment. To this replication the defendant interposed a demurrer which was overruled by the court below. The action of the lower court in overruling the demurrer, and in the giving and refusal of charges bearing on the questions, presents the principal matters for the determination of this court on the appeal.

We may, and do, dismiss all consideration of so much of the replication as sets up false and fraudulent representations on the part of defendant's agent as ground for avoiding the payment and settlement pleaded by the defendant, for the reason that it is entirely obvious from the averments of the replication, as well as the testimony, that Kirkpatrick did not rely upon their truth and was not induced by such representations, to accept the payment of the twenty-five dollars or to assign and surrender the policy to defendant. Nor can the replication be treated as sufficiently averring duress of actual imprisonment as a ground for avoiding the settlement and relinquishment of the policy set up in defendant's pleas. While it is averred that McDonald, after entering his room at the hotel with Kirkpatrick, locked the door, there is no allegation of threats that such imprisonment would be continued unless Kirkpatrick should accede to the settlement and surrender the policy, or that the arrangement was yielded to by Kirkpatrick in order to obtain his release from the room.

The replication, therefore, stripped of these features and tested by the demurrers, presents the single ques-

[Hartford Fire Insurance Co. v. Kirkpatrick, Dunn & Co.]

tion whether its averments sufficiently make out a case of duress from threats of imprisonment to avoid the settlement relied on by the defendant in its pleas, and the same question is also reserved by exceptions to the charges given and refused by the court.

It is a universal rule that if a party, for a valuable consideration, compromises and settles a disputed demand he cannot thereafter maintain a suit thereon on any ground that would have originally supported the action. This general rule, however, is subject to qualifications, and, among other exceptions, it has no application where such compromise and settlement are the direct result of fraud, or of duress of property or person, employed by the opposite party, or some one acting in his behalf; in as much as the law in its high and just regard for the contractual rights of parties will not permit any contracts to be binding but such as are made by persons who are entirely free to act in making or refusing such contracts.

In the form in which the case is before us the material inquiry, as we have said, is, whether the plaintiffs' replication to defendant's plea of payment and settlement sufficiently alleges facts showing duress which the law recognizes as legal grounds for avoiding such settlement; and the duress involved in the inquiry, as we have shown, is reduced to that character of duress generally designated as duress *per minas*.

The four distinct grounds on which a man may avoid his own act for duress *per minas*, as declared by Lord Coke, and generally recognized in the law since, are as follows: *First*, for fear of loss of life. *Second*, for fear of loss of member. *Third*, for fear of mayhem; and *fourth*, for fear of imprisonment.

A distinction may be observed in the decisions of various courts in their statements of the fourth ground above mentioned; the rule of decision adopted by some of the courts being that the threats must be of an unlawful imprisonment, and others that it is immaterial whether the threats are of an unlawful or lawful imprisonment, treating the duress as consisting in the state of mind produced by the threats and in which the act sought to be avoided was done. This court does not seem to have had occasion to commit itself to the one view or the other. We cannot perceive on principle

why such a distinction should exist. It was never contemplated in the law that either the actual or threatened use or misuse of criminal process, legal or illegal, should be resorted to for the purpose of compelling the payment of a mere debt, although it may be justly owing and due, or to coerce the making of contracts or agreements from which advantage is to be derived by the party employing such threats. Ample civil remedies are afforded in the law to enforce the payment of debts and the performance of contracts, but the criminal law and the machinery for its enforcement have a wholly different purpose, and cannot be employed to interfere with that wise and just policy of the law, that all contracts and agreements shall be founded upon the exercise of the free will of the parties, which is the real essence of all contracts.

In the later and better considered cases, both English and American, the distinction above referred to is not recognized, but, as we think, is justly discarded. We approve the statement of the doctrine as declared in *Morse v. Woodworth*, 155 Mass. 251, where it is said by the court: "It has sometimes been held that threats of imprisonment, to constitute duress, must be of unlawful imprisonment. But the question is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful as against the authorities and the public, but unlawful as against the threatener, when considered in reference to his effort to use for his private benefit processes, provided for the protection of the public and the punishment of the crime. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way; on the ground that the rights of the parties are to be determined by their language and their overt acts without reference to the influences which mould them. In such a case there is no reason why one should be bound by a contract obtained by force,

[Hartford Fire Insurance Co. v. Kirkpatrick, Dunn & Co.]

which in reality is not his, but another's." See also *Adams v. Irving Nat. Bank*, 116 N. Y. 606. To the same effect are the following cases : *Hackett v. King*, 6 Allen 58 ; *Taylor v. Jaques*, 106 Mass. 291 ; *Harris v. Carmody*, 131 Mass. 51; *Bryant v. Peck & Whipple Co.*, 154 Mass. 460 ; *Williams v. Bargley*, L. R. 1 H. L. 200 ; Ib. 4 Giff. 638, 663 and note ; *Eadie v. Slimmon*, 26 N. Y. 9 ; *Sharon v. Gager*, 46 Conn. 189 ; *Bane v. Detrick*, 52 Ill. 19 ; *Fay v. Oatley*, 6 Wis. 42 ; *Springfield Fire & Marine Ins. Co. v. Hull*, 25 L. R. Ann. 48 and notes ; *Brown v. Pierce*, 74 U. S. 205 ; *Baker v. Morton*, 12 Wall. 158.

It cannot, of course, be said, that the fact that a payment or contract is made or induced from a mere fear of imprisonment, if it should not be made, affords any reason for avoiding the payment or contract on the ground of duress. But if the fact that the person making the same is liable to arrest and imprisonment is used as a threat to overcome his will and compel a settlement which he would not have made voluntarily, it will amount to duress. The question in every case is whether his liability to imprisonment was used against him by way of threat to force a settlement. If so, the use was improper and unlawful, and if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they did overcome his will, he may avoid the settlement.—*McCormick Harvesting Machine Co. v. Hamilton*, 73 Wis. 486 ; *Robinson v. Gould*, 11 Cush. 55.

It is unnecessary for us to determine in this case whether the age, sex, state of health, temper and disposition of the party must be taken into consideration as circumstances calculated to give greater or less effect to the violence or threats. It is true the replication of the plaintiffs alleges the feeble physical condition of Kirkpatrick at the time of the alleged threats, it but is wholly insufficient to show such threats of personal violence by appellant's agent as to predicate them as a ground of duress, and the facts set forth in the replication to show threats of imprisonment, stripped of the averments as to fraud and personal violence, are, in our opinion, sufficient to show that they might naturally have overcome the mind and will of a man of ordinary firmness without reference to his physical state, and, further, to show that plaintiff in making the settlement did act under coercion from fear

[Gross v. Coffey.]

of threatened immediate imprisonment, and not of his own free will. The demurrer to the replication was, therefore, properly overruled.—*Reynolds v. Copeland*, 71 Ind. 422.

We discover no error in the other rulings of the court assigned as error that could have operated prejudicially to the appellant; and in this statement, we include the rulings of the court below on the question of tender.—*Springfield Fire & Marine Ins. Co. v. Hull*, 25 L. R. Ann. 37.

The judgment of the lower court is affirmed.