(September 25, 1912.)

## H. D. WILBUR, Respondent, v. RAY M. BLANCHARD, Appellant.

[126 Pac. 1069.]

DURESS—WHAT CONSTITUTES DURESS—EXTORTION—RECOVERY OF PAY-MENT MADE UNDER DURESS—AMOUNT DUE, THOUGH PAID UNDER DURESS, CANNOT BE RECOVERED.

(Syllabus by the court.)

1.   Under the modern rule of law, actual or threatened use or misuse of criminal process, legal or illegal, sufficient to overpower and overcome the will of the party threatened, constitutes duress.

2.   Duress may exist where one party threatens to cause the arrest of another on a charge of the commission of a crime if such threats overpower his will, although the party threatened is in fact guilty of the offense with which he is accused and for which his arrest is threatened.

3.   Under the statute of this state, secs. 7080 and 7081, Rev. Codes, extortion is the obtaining of property from another with his consent, induced by a wrongful force or fear or under color of official right, and fear such as will constitute extortion may be

induced by a threat to accuse the party of the commission of a crime.

4. Although one party has committed a crime in the theft of property from another, the party whose property is thus taken is not justified, and cannot be protected by the courts, in extorting money from the one who committed the theft under threats of arrest and imprisonment, where he uses such threats as a means of procuring a payment from the guilty party in excess of the reasonable value of the property taken.

5. Where W. was accused by B. of wrongfully and unlawfully converting and appropriating goods and property from B.'s store, and threatened W. with arrest and prosecution, and W. thereupon paid B. the sum of $2,150, and W. thereafter prosecuted his action against B. to recover the same on the ground that it was procured through duress: *held*, that the jury should have been instructed that if they found the payment was made under duress, and that any part of the whole thereof was justly due from W. to B. as the value of property unlawfully converted and appropriated, that W. should not be allowed to recover such part of the payment so made as represented the reasonable value of the property taken or the debt due.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action by plaintiff to recover judgment for a sum paid under duress. Judgment for plaintiff and defendant appealed. *Affirmed.*

W. C. Howie and J. G. Watts, for Appellant.

In order for the party to recover money, the threat must have been made of unlawful prosecution or unlawful exposure; the party threatened must have been innocent of the offense charged, and in addition thereto the threat must have been made wrongfully and without reason to believe the party threatened was guilty, or it must have been by abuse of process actually issued. (*Shattuck v. Watson,* 53 Ark. 147, 13 S. W. 516, 7 L. R. A. 551; *Sheldon v. School District,* 24 Conn. 88; *Smith v. Attwood,* 14 Ga. 402; *Jones v. Peterson,* 117 Ga. 58, 43 S. E. 417; *Heaps v. Dunham,* 95 Ill. 583; *Darling v. Hines,* 5 Ind. App. 319, 32 N. E. 109; *Giddings v. Iowa Sav-*

*ings Bank,* 104 Iowa, 676, 74 N. W. 21; *James v. Dalbey,* 107
Iowa, 463, 78 N. W. 51; *Taylor v. Blake,* 11 Minn. (Gil. 170)
255; *Eddy v. Herrin,* 17 Me. 338, 35 Am. Dec. 261; *Hilborn
v. Buckman,* 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272; *Beath
v. Chapoton,* 115 Mich. 506, 69 Am. St. 589, 73 N. W. 806;
*McCormick Harvester Co. v. Miller,* 54 Neb. 644, 74 N. W.
1061; *Compton v. Bunker Hill Bank,* 96 Ill. 301, 36 Am.
Rep. 147; *Clark v. Turnbull,* 47 N. J. L. 265, 54 Am. Rep.
157; *Landa v. Obert,* 45 Tex. 539; *Comstock v. Tupper,* 50
Vt. 597.)

Perky & Crow and L. B. Green, for Respondent.

If payments are made under what the law regards as
duress, they are not within the doctrine of voluntary payment,
and may be recovered in the absence of special circumstances.
(2 Page on Contracts, sec. 799.)

By the weight of modern authority, threats of criminal
prosecution which will eventually result in imprisonment may
constitute duress. (1 Page on Contracts, sec. 251, and cases
cited.)

If the threatened imprisonment is unlawful, duress exists.
If the threat is of lawful imprisonment, but it is unlawfully
used to obtain the contract, duress exists. (1 Page on Con-
tracts, sec. 252, and cases cited.)

Under the modern doctrine of duress the sole question is:
Was the party so affected by the threats as to prevent a meet-
ing of minds? (9 Cyc. 450, 451, and cases cited.)

Where extortion exists, it is immaterial whether the threat-
ened arrest was lawful. (2 Page on Contracts, sec. 800, and
cases cited.)

The question as to the existence of duress is a question
of fact, and each case must be determined upon its peculiar
circumstances. (*Galusha v. Sherman,* 105 Wis. 263, 81 N. W.
495, 47 L. R. A. 417; *Morse v. Woodworth,* 155 Mass. 233, 27
N. E. 1010, 29 N. E. 525; *Hartford etc. Ins. Co. v. Kirkpatrick,*
111 Ala. 456, 20 So. 651; *Heckman v. Swartz,* 64 Wis. 48,
24 N. W. 473; *Richardson v. Duncan,* 3 N. H. 508; *Heaton v.
Norton State Bank,* 59 Kan. 281, 52 Pac. 876; *Hunter v.*

*New York & O. W. Ry. Co.,* 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246; *Miller v. Bryden,* 34 Mo. App. 602; *Haydock v. Haydock,* 33 N. J. Eq. 494.)

AILSHIE, J.—This action was instituted by the plaintiff for the purpose of obtaining a judgment for $2,150, charging the defendant with the extortion of this sum from him on two several dates, the sum of $1,500 on the 26th day of November, 1908, and $650 on the 16th day of January, 1909. It was alleged that the foregoing sums were extorted from the respondent by threatening to prosecute him for the commission of the crime of larceny. It was admitted by the answer that the plaintiff had paid the defendant the sum of $2,150, but defendant denied that the payment had been procured unlawfully or unjustly. The case was tried before the court with a jury, and a verdict was returned and judgment entered against the defendant for the sum of $2,000, being $150 less than the sum which it was admitted had been paid. The defendant appealed from the judgment.

The only provisions of the statute of this state with reference to extortion are found in the Penal Code. Sec. 7080, Rev. Codes, defines extortion as follows: "Extortion is the obtaining of property from another, with his consent, induced by a wrongful force or fear or under color of official right"; and sec. 7081, Rev. Codes, provides, *inter alia,* as follows: "Fear, such as will constitute extortion, may be induced by a threat, . . . . (2) To accuse him, or any relative of his, or member of his family of any crime."

The appellant complains of instructions 12, 13, 14, 15 and 16, given by the court to the jury. Those instructions are as follows:

"No. 12. In this case certain payments of money aggregating $2,150 are admitted to have been made by the plaintiff Wilbur to the defendant Blanchard, and one question for you to determine is, were such payments made while Wilbur was under duress, because of the threats either uttered by Blanchard or implied from his conduct?

"Duress may be defined as an unlawful restraint, intimidation or compulsion of another to such an extent and degree

as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination.

"No. 13. If you find from the evidence that the defendant Blanchard obtained the sum of $2,150 from the plaintiff Wilbur, for which Wilbur was not indebted to Blanchard, and you further find that at the time of such payment, or shortly before, that Blanchard accused Wilbur of theft, and in connection with such charge threatened to accuse him with the commission of such crime, or to cause his arrest therefor, and you further find that such threat to accuse him of crime or cause his arrest caused or induced Wilbur to fear that the defendant would accuse him of crime, or cause his arrest on such charge, and you further find that such money would not have been paid without such threat, and that it was in fact made contrary to Wilbur's will and inclinations, then I say to you the plaintiff is entitled to recover the amount so paid.

"No. 14. The defendant has admitted the receipt of $2,150 from the plaintiff, and is defending this action upon the ground that he was justly entitled to that amount and more from plaintiff, and that such sum was paid to him in settlement of claim.

"This is an affirmative defense, and it is incumbent upon the defendant to establish it by a preponderance of the evidence, and in this connection I say to you that if you find from the evidence that the payments in. question, or either of them, were extorted from plaintiff because and by reason of threats on the part of the defendant that he would institute a prosecution against the plaintiff or cause his arrest for theft, and that such threats caused plaintiff to fear that defendant would do so, and you further find that such money would not have been paid without such threats, and it was in fact paid contrary to plaintiff's will and inclinations, because of said threats, then such transaction or transactions would not be a settlement. and you will find for the plaintiff in whatever sum or sums was paid by him by reason of such threats of prosecution or, arrest.

"No. 15. You are instructed that the defendant cannot defend this action upon the mere ground that the charge of theft which he made against plaintiff was true, or, in other words, the truth or falsity of that charge alone is wholly immaterial to this inquiry, as one is not justified in extorting money from even one guilty of crime, provided you find any extortion was practiced.

"No. 16. Under the statutes of this state, extortion is defined as the obtaining of property of another with his consent, induced by a wrongful force or fear, or under color of official right, and that the fear such as will constitute extortion may be induced by a threat, either to accuse a person or any relative of his, or member of his family, of any crime, or to expose or to impute to him or them any deformity or disgrace, or to expose any secret affecting him or them."

The chief contention made against all these instructions is that they all tend to advise the jury what was specifically said in No. 15, namely, "That the defendant cannot defend this action upon the mere ground that the charge of theft which he made against plaintiff was true, or, in other words, the truth or falsity of that charge alone is wholly immaterial to this inquiry, as one is not justified in extorting money from even one guilty of crime, provided you find any extortion was practiced."

It is argued that these instructions do not correctly state the law on the subject.

Appellant places his chief reliance on *Hilborn v. Bucknam,* 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272, and the line of authorities sustaining that doctrine which holds that, "It is not duress for one who believes he has been wronged to threaten the wrongdoer with a civil suit; and, if the wrong includes a violation of the criminal law thereof, it is not duress to threaten him with a criminal prosecution." To same effect, see *Shattuck v. Watson,* 53 Ark. 147, 13 S. W. 516, 7 L. R. A. 551; *Thorn v. Pinkham,* 84 Me. 718, 30 Am. St. 335, 24 Atl. 718; *Knapp v. Hyde,* 60 Barb. (N. Y.) 80; *McCormick Harvesting Mch. Co. v. Miller,* 54 Neb. 644, 74 N. W. 1061; *James v. Dalbey,* 107 Iowa, 463, 78 N. W. 51. The

authorities upon which appellant relies adhere to the old common-law doctrine of duress, which was to the effect that "in order to avoid an act on the ground of menace of arrest or imprisonment, it must appear that the menace was of unlawful imprisonment." The common-law rule has undergone many changes and modifications in more recent years, as may readily be seen from an examination of the text and authorities cited in 9 Cyc., pp. 446 to 456; also, 2 Page on Contracts, secs. 799 and 800, and 1 Page on Contracts, sec, 252; *Galusha v. Sherman,* 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, and *Hartford Fire Ins. Co. v. Kirkpatrick,* 111 Ala. 456, 20 So. 651.

We are not inclined to go into an extended analysis of the authorities or discussion of the reasons for the various rules that have been announced from time to time, but after an examination and consideration of the question, we are inclined to favor the doctrine and adopt it as a rule to be followed in this state, as it was announced by *Galusha v. Sherman,* 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, *Hartford etc. Co. v. Kirkpatrick,* 111 Ala. 456, 20 So. 651, *Morse v. Woodworth,* 155 Mass. 233, 27 N. E. 1010, 29 N. E. 525, *Heckman v. Swartz,* 64 Wis. 48, 24 N. W. 473, subject only to the condition and modification hereinafter considered.

The supreme court of Alabama, in *Hartford Fire Ins. Co. v. Kirkpatrick, supra,* said:

"It was never contemplated in the law that either the actual or threatened use or misuse of criminal process, legal or illegal, should be resorted to for the purpose of compelling the payment of a mere debt, although it may be justly owing and due, or to coerce the making of contracts or agreements from which advantage is to be derived by the party employing such threats. Ample civil remedies are afforded in the law to enforce the payment of debts and the performance of contracts, but the criminal law and the machinery for its enforcement have a wholly different purpose, and cannot be employed to interfere with that wise and just policy of the law that all contracts and agreements shall be founded upon the exercise of the free will of the parties which is the real

essence of all contracts. . . . . It cannot, of course, be said that the fact that a payment or contract is made or induced from a mere fear of imprisonment if it should not be made affords any reason for avoiding the payment or contract on the ground of duress. But if the fact that the person making the same is liable to arrest and imprisonment is used as a threat to overcome his will and compel a settlement which he would not have made voluntarily, it will amount to duress. The question in every case is whether his liability to imprisonment was used against him by way of threat to force a settlement. If so, the use was improper and unlawful; and if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they did overcome his will, he may avoid the settlement."

The supreme court of Wisconsin, in *Galusha v. Sherman, supra,* reviewed the authorities at considerable length, and approved and adopted the doctrine announced by the Alabama court in the Kirkpatrick case, and, among other things, said:

"Duress, in its broad sense, now includes all instances where a condition of mind of a person, caused by fear of personal injury or loss of limb, or injury to such person's property, wife, child or husband, is produced by the wrongful conduct of another, rendering such person incompetent to contract with the exercise of his free will power, whether formerly relievable at law on the ground of duress or in equity on the ground of wrongful compulsion.

"The making of a contract requires the free exercise of the will power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party, for the time being, through fear, is bereft of his free will power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. . . . . The question in each case is, Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of ob-

taining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, or the person or liberty of his wife or child, the advantage thereby obtained cannot be retained. . . . .

"The law no longer allows a person to enjoy, without disturbance, the fruits of his iniquity, because his victim was not a person of ordinary courage; and no longer gauges the acts that shall be held legally sufficient to produce duress by any arbitrary standard, but holds him who, by putting another in fear, shall have produced in him a state of mental incompetency to contract, and then takes advantage of such condition, no matter by what means such fear be caused, liable at the option of such other to make restitution to him of everything of value thereby taken from him."

1 Page on Contracts, sec. 252, in discussing the effect of duress on a contract and what may properly be considered duress in such case, says:

"On the question of whether to constitute duress the threatened imprisonment must be unlawful, the courts differ. If the threatened imprisonment is unlawful, duress exists. If the threat is of lawful imprisonment but it is unlawfully used to obtain a contract, duress exists. Abuse of criminal process, whereby one is coerced into giving a note, is clearly duress. If the threat is of lawful imprisonment and it is not intended to make unlawful use thereof in coercing the prisoner, the courts are divided as to whether duress exists. The majority hold that if the threat of imprisonment overpowers the mind of the prisoner, duress exists. A minority hold that a threat of lawful imprisonment made in good faith without the intent of extorting the contract in question thereby, is not duress. The effect of the guilt or innocence of the person whose arrest and criminal prosecution is threatened is another question on which the courts do not agree. . . . . If it is a *bona fide* charge, some courts hold that duress does not exist even though the accused may prove to be innocent;

others hold that duress may exist, if the mind of the promisor is in fact overpowered.''

In vol. 2 of the same work, at sec. 799, the author considers the subject of ''payment under duress and undue influence,'' and comments as follows:

''The nature of duress as determining the right of a party making payments to recover ·them is largely governed by the same rules as those by which the right to avoid contracts is determined. If payments are made under what the law regards as duress, they are not within the doctrine of voluntary payments, and may be recovered in the absence of special circumstances. In some respects, however, as we shall see later, the right to recover payments was broader at common law than the right to avoid contracts, and by some authorities the right to recover payments made under compulsion of law has been treated as a ground of recovery distinct from any form of duress.''

It will be seen from the foregoing that Professor Page considers the same principle alike applicable in cases where it is sought to recover back a payment made under duress and those cases where it is sought to cancel or avoid a contract on account of duress. It would seem to us that the same elements of contract and a meeting of minds must necessarily be involved in the one that is involved in the other. The payment must necessarily be demanded for some purpose and consequently paid for some purpose. The demand and payment necessitate a meeting of the minds, and this· is a contract.

Now, reverting again to the provisions of our statute, we find that the fear ''such as will constitute extortion may be induced by threat,'' and that such threat may be simply ''to accuse'' the party of a crime. It is apparent that money or property might as readily be obtained by one who is in fact guilty of the crime by threatening to accuse him thereof, as from one not guilty of a crime who is *threatened* with such accusation. It seems to us that justice demands that no one should be allowed to extort money from another which is not justly due or owing to him by overpowering the will

and mental faculties of his adversary under threats of arrest or imprisonment, even though the party may in fact be guilty of such crime. Two wrongs do not make a right, and the fact that a man is guilty of larceny does not justify the man from whom the property has been stolen to use that fact as a means or instrument of obtaining money or property from the thief which is not justly due and owing.

This brings us to the peculiar feature of the present case which has not received any special consideration in the above authorities and which, in a sense, places this case in a distinct and separate class from the cases above cited. Here it was charged by the complaint and admitted by the answer that $2,150 was paid by the respondent to the appellant. It was charged by the answer that the payment was made, however, in satisfaction and settlement for the goods and merchandise which the respondent had previously converted and appropriated from appellant's store. Upon the trial, respondent testified that he had never converted or appropriated any of the appellant's property, and that at the time he made these payments he was not owing appellant any sum whatever. The appellant, on the other hand, testified and produced witnesses to corroborate him, that he caught the respondent in the act of larceny from his store, and that these payments were made in settlement and compensation for the amount of property which he had previously taken. When the matter was submitted to the jury, the court instructed them that the truth or falsity of the charge made by Blanchard against Wilbur was wholly immaterial to the inquiry, and that the vital and decisive question for them to determine was whether or not the threat made by Blanchard to accuse Wilbur of the commission of a crime and cause his arrest produced such fear in Wilbur's mind as to be the sole and moving cause for his making the payment. The jury were in substance advised that if this payment was made through threats and fear of arrest, the party making the payment was entitled to its return, but that if it was not so made, that he was not entitled to the return. Notwithstanding these instructions and admissions, the jury returned a verdict in favor of the plain-

tiff in the lower court for $2,000, which was $150 short of
the amount which it was admitted had been paid over. They
must, therefore, of necessity have concluded that the plain-
tiff Wilbur had taken and converted property of the defend-
ant Blanchard to the value of $150. They must, on the other
hand, have concluded that Blanchard used this condition and
state of facts for the purpose of inducing such fear in the mind
of Wilbur as to overpower his free will and extort from him
the additional sum of $2,000. In other words, they found
that both parties were guilty, that Wilbur was guilty of
wrongfully converting and appropriating to his own use
Blanchard's property, and that Blanchard, on the other hand,
was guilty of extorting, through fear of arrest, the sum of
$2,000 from Wilbur. This, it will be remembered, was done,
not under authority and direction of the instruction from the
court, but in violation thereof, and calls for the consideration
of a question of law not dealt with in the cases above cited.

Now, it would seem entirely just,—and if just it ought to
be the law,—that if Wilbur had stolen property from Blanch-
ard and afterward paid Blanchard the reasonable value of the
goods taken, he ought not to be able to recover that sum back,
even though the payment were made under threats of arrest
or duress as defined by the foregoing authorities. On the
other hand, although Wilbur had converted and appropriated
Blanchard's property and was guilty of a crime and legally
liable to pay for the property taken, Blanchard had no right
to use that as a means of extorting from Wilbur a sum in ex-
cess of the value of the goods taken.

The modern rule with reference to payments made under
duress as announced in the above authorities from Alabama,
Wisconsin, Massachusetts, and Page on Contracts, has re-
sulted from the efforts of courts to avoid a multiplicity of
suits and to administer law and equity by the same tribunal
and in the same action, and it will be seen from a considera-
tion of the authorities that it is a blending of both the legal
and equitable remedies in one action. If this be true, then
the court ought to see to it that when a party comes in and
seeks to recover back a payment on the ground that it has

been made under duress, he should only be allowed to recover the amount which was in excess of the amount due and which was wrongfully and unlawfully procured from him, and that he should not be allowed any sum which was reasonably and justly due from him to the other party when the payment was made. We find authority in the books to support this position.

In *Beath v. Chapoton*, 115 Mich. 506, 69 Am. St. 589, 73 N. W. 806, the supreme court of Michigan had under consideration a similar question where a party had been charged with embezzlement and had given his notes for $2,000 in settlement thereof. He subsequently defended against the collection of the notes, on the ground that they were given under duress. After citing and considering a number of authorities, the court said: "Under the above decisions, he was liable upon them to the extent of moneys appropriated by him, if any were so appropriated; and it was the province of the jury to determine the amount. If he had appropriated none of the plaintiff's money, of course the note was without consideration, and void." The authorities supporting that view are cited in the opinion.

We conclude, therefore, that the court in this case should have given the further instruction to the jury that if they believed and found that the payments in this case were made under duress, as that term was defined by the instructions, and at the time of making such payments the plaintiff was in truth and in fact indebted to the defendant in any sum for and on account of goods or property wrongfully converted and appropriated by him, that they should find the value of such property and deduct the same from the amount of the payment sought to be recovered. The failure of the court, however, to give such an instruction is no cause for reversal of the judgment herein, for the reason that the appellant did not ask any such instruction nor did he try his case on that theory of the law. On the contrary, counsel for appellant requested the court to give his instruction No. 17, which was refused by the court, and this instruction proposed to tell the jury that "it is not necessary in this action to deter-

mine the amount of goods lost by defendant or whether he lost any goods. If you believe from all the evidence that the defendant actually believed he had lost goods and he believed the plaintiff had taken them, then the court instructs you that the defendant was justified in making a demand on the plaintiff for a settlement, and the plaintiff cannot now avoid the settlement made unless he can show the money was obtained from him unlawfully and without consideration and through fear.'' The latter part of this instruction was somewhat contradictory to the proposition advanced in the first part, but it shows the theory on which the appellant presented his case. The failure, therefore, of the court to instruct the jury that it was their duty to allow the appellant for all goods and property which they believed he had lost by reason of the wrongful acts of the respondent was not presented in this case, and is not ground for reversal of the judgment. Notwithstanding the failure of the court to give such an instruction, the jury evidently thought that would be right, and allowed the appellant credit of $150.

The appellant presented to the court nineteen instructions, and requested that they be given. All of the instructions requested, which correctly stated the law were either given as requested or in substance in the court's instructions. Some of these requests were clearly erroneous, and were properly rejected. We find no error in the action of the court in this respect.

In the light of what has already been said in this opinion, and the facts as disclosed by the record, we find no reason for reversing the judgment in this case. The evidence was conflicting; in fact, it is directly contradictory and could not be reconciled. The jury evidently did not wholly believe either party, but must have rather given more weight to the attendant circumstances of the transaction, as detailed by the corroborating witnesses on each side, and from that arrived at what they thought would be approximate justice. The judgment will therefore be affirmed, with costs in favor of the respondent.

Stewart, C. J., and Sullivan, J., concur.