# Embry v. Adams.

### Bill to Cancel Deed for Fraud.

(Decided February 11, 1915.   68 South. 20.)

*Deeds; Duress.*—Where respondent threatened to have complainant's father sent to the penitentiary for fraud in the sale of land, unless complainant conveyed to respondent lands which complainant owned, a court of equity will cancel such a conveyance.

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Bill by W. H. Adams against A. G. Embry to cancel a deed for fraud and remove it as a cloud upon complainant's title. From a decree overruling demurrer to the bill, respondent appeals. Affirmed.

RIDDLE, ELLIS, & RIDDLE, for appellant.

SAMUEL HENDERSON, and HAYNES & WALLACE, for appellee.

THOMAS, J.—The bill in this cause avers that appellee, H. W. Adams, owns jointly or as tenant in common with the appellant, A. G. Embry, certain lands in Shelby county, Ala.; that said lands were purchased

and conveyed to appellee and his mother, M. A. Adams; and that, after the death of his mother, appellee's father, H. D. Adams, sold and conveyed said lands by warranty deed to the appellant.

The fifth paragraph of the bill alleges: "That on the 7th day of August, 1908, respondent came to this complainant at or near Harpersville, in Shelby county, Ala., and stated to him that complainant's father, H. D. Adams, had procured or obtained his money under false pretense. Respondent further told this complainant that, if he did not execute a deed to the said respondent, covering his interest in the lands right then, he (the respondent) would put complainant's father in the chain gang. Upon complainant's refusal to execute the said deed to respondent, he (the said respondent) turned his horse towards Columbiana, stating at the time that he had seen lawyers at Columbiana and would drive down and have the papers issued; that, acting under extreme distress and what he thought the necessity of the case required, he (this complainant) did execute a deed to said respondent covering said lands, and which was the only property he owned; that the only consideration paid by the said respondent to the complainant was the sum of $25, which was totally and wholly inadequate as payment for complainant's interest in said lands, complainant averring that his interest in said lands was worth at least $1,000. Complainant avers that he had no advice and acted hastily and under extreme distress and surprise and without due deliberation, and that he forced his wife to sign her name to said deed solely and for the purpose of preventing the prosecution and possible conviction of his father."

By the sixth paragraph of the bill it is averred that offer to pay the purchase price of $25, with interest

[Embry v. Adams.]

thereon, was made, and readiness on the part of complainant, at all times, to repay the same is also thereby averred.

The prayer of the bill is that the deed of conveyance thus executed by complainant and wife be canceled and removed as a cloud on complainant's title, upon the payment of the sum of $25, and interest thereon, to the appellant, and that on final hearing said lands be sold for the purpose of dividing the proceeds among the several joint owners or tenants in common. The respondent in the court below demurred to the bill, on the ground that "the same contains no equity." The case being heard by the judge of the county court of Shelby, exercising jurisdiction in equity, the demurrer was overruled. From this action of the trial court appeal was duly taken, and errors are assigned thereon in this court.

The solicitors for the appellant, in the brief filed in this court, thus state the issue: "The sum and substance of the bill is that H. D. Adams, the father of the complainant, sold to and made this respondent a deed to eighty acres of land in Shelby county, for which the respondent paid the said H. D. Adams, thinking thereby that he was acquiring a complete title to the lands involved in this suit." That, when appellant found out that appellee's "father had practiced a fraud, he (Embry) threatened to prosecute and convict H. D. Adams, complainant's father, for obtaining his money under false pretense, and the complainant, W. H. Adams, to keep his father from being prosecuted and convicted, agreed to and did make respondent, Embry, a deed to the land, Embry paying him the additional consideration of $25, etc."

The demurrer questions the sufficiency of the averment of the bill for relief in a court of equity.

In *Kirby v. Arnold, infra,* 68 South. 17, we have collected the general authorities on the subject of duress and undue influence, the consensus of which we believe is decisive of this appeal.

The doctrine is declared in *Martin v. Evans,* 163 Ala. 657, 50 South. 997, that, where one conveys lands on the representation, by the grantee, that a son of the grantor has embezzled funds from the grantee, coupled with the threat that the son will be prosecuted for the embezzlement unless the conveyance is executed, the grantor is entitled to have it set aside as having been obtained under duress and undue influence, and without consideration.

The consideration averred to have been paid for the property involved in this suit was a grossly inadequate one, and the facts here are substantially those on which the decision was based in *Martin v. Evans, supra.* This wholesome doctrine of relief in equity was extended in *Kirby v. Arnold, supra,* to the threat of prosecution of a grandfather; and in *Holt v. Agnew,* 67 Ala. 360, 373, to such a threat against a husband.

In *McClintock v. Cummins,* 3 McLean, 158 159, Feb. Cas. No. 8,699, it was said: "The father and the son may each avoid his obligation by duress of the other; and so a husband may avoid his deed by duress of his wife. *   *   * "

But it has long been the habit of courts of equity to relieve parties from contracts made under the influence of threats, or of apprehensions not amounting to legal duress. Where a fraudulent advantage has been taken of the fears, the affections, or the sensibilities of a party, equity will grant relief. Judge Story says that circumstances of extreme necessity and distress of a party, though not accompanied by any direct restraint or duress, may so entirely overcome his free agency as to

justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it. In such case he has no free will, but stands in vinculis.—2 Sto. Eq., § 239.

Mr. Justice Morton, in *Harris v. Carmody*, 131 Mass. 51-54 (41 Am. Rep. 188), says: "In a note to *Bayly v. Clare*, 2 Brownl. 275, 276, in the Common Bench, Michaelmas term 7 Jas. 1, it is said that 'the husband may avoid the deed that he hath sealed by the duress of imprisonment of his wife or son. * * *' But a son shall avoid his deed by duress to his father.—M. 7 Ja. B. per Coke. The husband shall avoid a deed by duress to his wife.—M. 7 Ja. B., per Coke."—1 Rol. Ab. 687, pis. 4-6.

Lord Bacon declared: "So if a man menace me, that he will imprison or hurt in body my father or my child except I make unto him an obligation, I shall avoid this duress, as well as if the duress had been to mine own person."—Bac. Max. Reg. 18.

The same law is explicitly laid down without question by the author of Bacon's Abridgment and by Mr. Dane and by Mr. Justice McLean.—Bac. Ab. Duress, 5 Dane Ab. 166, 375.

In *McCormick H. M. Co. v. Hamilton et al.*, 73 Wis. 486-495, 41 N. W. 727, 730, where many authorities are collected, the court declared: "The contract is then void by every principle of equity. It is the worst species of fraud, because it attacks the weakest point of human nature, and appeals to natural affection. What will not a mother do to save her child from imprisonment for crime of which he is not guilty?"

The threat in this case was that, unless she executed a mortgage, the plaintiff would cause the imprisonment

of her son for a crime of which the latter was not in fact guilty.

In *Morse v. Woodworth,* 155 Mass. 251, 29 N. E. 528, it is said by the court: "It has sometimes been held that threats of imprisonment, to constitute du- ·ress, must be of unlawful imprisonment. But the ques- tion is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the ex- ecution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful as against the authorities and the public, but unlawful as against the threatener, when considered in reference to his effort to use for his private benefit pro- cesses provided for the protection of the public and the punishment of crime. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal con- tract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts, without reference to the influence which mold them. In such a case, there is no reason why one should be bound by a contract obtained by force, which in reality is not his, but another's."—*Hart- ford Fire Insurance Co. v. Kirkpatrick, Dunn & Co.,* 111 Ala. 456, 466, 20 South. 651.

In *Glass v. Haygood,* 133 Ala. 489, 31 South. 973, the rule of duress was declared to apply when the pos- session of one's goods is unlawfully held against him, and he has such an important, urgent, and immediate occasion for their possession and use as cannot be sub- served by a resort to courts to recover them, he may

avoid any contract he enters into with the wrongdoer in order to regain the possession of his goods.

We thus see that both ancient and modern authorities agree that the doctrine of duress or threat of punishment to husband or to wife, or to parent or to child, is based upon the nearness and tenderness of the relation, applying as strongly to the case of parent and child as to that of husband and wife. No more powerful or restraining force can be brought to bear upon a man, to overcome his will and extort from him an obligation, than the threat of great injury or punishment to wife or child or parent.

The county court, exercising jurisdiction in equity, was correct in overruling the demurrer that the bill contained no equity, and the decree is affirmed.

Affirmed.

ANDERSON, C. J,. and MAYFIELD and SOMERVILLE, JJ., concur.