## BURDINE v. ROPER, ADM'R.

1. An administrator causes an execution to be issued upon a judgment obtained by his intestate, and to be levied on a slave which is claimed by a third person, and a trial of the right of property is had under the statute, which results in the condemnation of the slave, who is sold, and the money received by the administrator. Afterwards, the judgment of condemnation is reversed, and upon another trial the slave is found not liable to the satisfaction of the execution. *Held*, that the administrator was liable in an action of assumpsit, in his individual, and not in his representative character, for the money so received.

Error to the Circuit Court of Pickens.

Assumpsit, by the defendant against the plaintiff in error. From a bill of exceptions, it appears, that a firm styled Davis & Humphreys, of which one Joseph Martin was a partner, recovered a judgment against the administratrix of David Archer. Martin died, and the plaintiff in error became his administrator, and in that capacity had control of the above recited judgment. An execution issued on the judgment, and was levied on a slave in the possession of one Wier, who interposed a claim under the statute, and upon the trial the slave was found subject to the execution, sold, and the proceeds

paid to Burdine. Subsequently this Court reversed the judgment, and on a second trial, the slave was found not subject to the execution. This action is brought by the administrator of Wier to recover back the money.

The Court charged, that the plaintiff was entitled to recover.

The defendant moved the Court to charge, that if Burdine received the money as administrator, there could be no recovery against him individually, which the Court refused; and to the charge given, and that refused, the defendant excepted.

B. F. PORTER, for plaintiff in error, insisted, that the principle, that money paid upon an execution may be recovered back, did not apply here, because the judgment and execution remained in full force. [6 Cowen 300; 9 Johns. 232.]

The action will not lie against the defendant personally, as the presumption must be, that the money has been paid out in the course of his administration. [4 Porter, 352; 3 Johns. 183.]

He also cited 2 Day, 153; 13 S. & R. 292; 2 Dall. 231; 2 Mun. 272.]

L. CLARKE, contra. The money arising from the slave, was not assets of the estate, and therefore the defendant could not have been sued in his representative character. [5 Cow. 280.]

The sale of the slave was a trespass which the party may waive, and proceed in assumpsit for the money. [5 Pick. 285; 12 Id. 120.] He also cited 10 Wend. 354; 6 Cowen, 299.

ORMOND, J.—The general principle is not denied, that an action of *indebitatus assumpsit* will lie, to recover back money paid upon an execution, issued on a judgment which has been reversed; but it is argued, first, that the rule does not apply to such a case as the present, where the judgment remains in full force, and the execution is not vacated.

The judgment in virtue of which the slave was sold, was rendered upon the proceeding, under our statute, for the trial of the right of property, a proceeding which is collateral to the judgment on which the execution issued, and is in itself a suit, conducted by different parties. The reversal of a judgment of

condemnation upon a trial of right of property, being a sepa-rate and distinct proceeding, does not affect the validity of the judgment upon which the execution issued ; but such reversal vacates the judgment of condemnation, and the execution which issued upon it, by virtue of which the property was sold. We need not now inquire, what the effect of this rever-sal would have been upon third persons purchasing the pro-perty ; the reversal of the first judgment condemning the slave, and the subsequent judgment, that the property was not sub-ject to the plaintiff's execution, conclusively establishes, that he has no title to the money derived from the sale under the first judgment.

The doctrine contended for, that no action can be maintain-ed against the plaintiff, except in his character of administra-tor, proceeds upon the supposition, that the money derived from the sale of the slave, was assets of the estate in his hands to be administered ; but no proposition can well be clearer, than that the proceeds of this sale were not assets. If the distributees, or creditors, should attempt to hold him responsi-ble for this money, the reversal of the first judgment, and the subsequent proceedings, would be conclusive to show, that the estate had no title to it.

It is further urged, that we must presume that the money has been paid out in the course of the administration, and that therefore, the plaintiff is not personally responsible. If such an inference could be drawn, it would avail nothing in this case. Cases may indeed be supposed, in which the *prima facie* intendment being, that the property belonged to the es-tate, the administrator would not be personally responsible, if he disposed of it in the regular course of administration, before a claim was asserted to it. But that is not this case. Here, the levy was made, and the property sold by his direction, and he is personally responsible for the consequences. No suit can be maintained, or judgment be recovered, against an exec-utor, or administrator as such, unless the judgment when re-covered, may be satisfied out of the estate in his hands to be administered. But it is too clear for argument, that no judg-ment could be maintained in this case against the estate, and it therefore follows, that the judgment against him in his indi-vidual character was proper. Let the judgment be affirmed.