# Cannon *v.* Gilmer.

*Bill in Equity to cancel Deed and Mortgage.*

1. *Transaction between parties occupying fiduciary relation towards each other; when such relation shown to exist; burden of proof.*—The general principle which a court of equity applies to transactions between persons occupying fiduciary relations towards each other is not confined to cases such as guardian and ward, parent and child, etc., in which there is any formal or technical fiduciary relations, but extends to cases in which confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal or business relations existing between the parties, which gave

the one advantage or superiority over the other; and such burden is on the party in whom confidence is reposed, to show that no fraud, undue influence or other improper motive entered into the transaction.

2. *Same; same; case at bar.*—An illiterate negro woman about seventy years old, who was unable to read and write, upon being threatened by one of her own race that he would take from her a small piece of property upon which she lived and which belonged to her husband prior to his death, consulted a white man, who was her neighbor, and was intelligent, and in whom she had great confidence. The person so consulted advised her to have such lands alloted to her as a homestead. and further advised that after this was done she could give him a mortgage on said land, which though a "bogus or false mortgage," would protect her against the claim of the person who had threatened suit. Acting upon his advice and counsel she had said land allotted to her as a homestead, said person so consulted being active therein. Knowing the confidence and trust reposed in him by the old woman. he induced her to execute to him a mortgage on said lands, which should purport to secure a pretended indebtedness evidenced by a promissory note. He had, however, never paid her any money. Subsequently, by playing upon the fears of the old woman, the person whom she had so consulted induced her to execute a deed to him conveying said land, upon a recited consideration of the indebtedness stated in the mortgage, though neither that some nor any other had been paid by him to her, and the deed was wholly without consideration. *Held*: That upon such facts there was a breach of the fiduciary relations existing between the parties, and the old woman, by bill in equity, could have said mortgage and deed cancelled.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE. ·

The bill in this case was filed by the appellee, Julia Gilmer, against the appellant, N. N. Cannon, and prayed to have a certain mortgage and deed executed by the complainant to the defendant delivered up and cancelled as having been procured by fraud, misrepresentation and undue influence. The facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause on the pleadings and proof, the chancellor decreed that the complain-

[Cannon v. Gilmer.]

ant was entitled to the relief prayed for and ordered accordingly. From this decree the respondent appeals, and assigns the rendition thereof as error.

RAY RUSHTON, for appellant.—A grantor cannot avoid a deed because the consideration was illegal, immoral or violative of public policy.—*Potter v. Gracie,* 59 Ala. 59; *Hill v. Freeman,* 73 Ala. 200. The turning point in the case, therefore, must be upon the question whether or not complainant proved her allegation that there was no debt to support the mortgage, and no consideration for the deed. If there was a debt supporting the mortgage, there was a consideration for the deed. *Mason v. Buchanan,* 62 Ala. 210.

The bill can not be maintained as a bill to set aside the mortgage and deed for fraud in the procuration of its execution.—*Stacey v. Walter, et al,* 125 Ala. 291; 28 Sou. Rep. 89. The want of consideration is affirmative matter, and the burden of proof rests upon the party affirming the want of the same.—*Bolling v. Munchus,* 65 Ala. 558.

WATTS, TROY & CAFFEY, *contra.*—The evidence shows that the complainant was old, black and ignorant, the defendant while and intelligent, and that he took advantage of her. Confidential relations existed between these parties at the time these conveyances were made, and the burden was on the appellant to prove satisfactorily that they were just, fair and equitable in every respect, and not on the party seeking to avoid them that they were fraudulent. This he failed to do.—*Burke v. Taylor,* 94 Ala. 530; *Kyle v. Perdue,* 95 Ala. 579; *Waddell v. Lanier,* 62 Ala. 347; *Shipmann v. Furniss,* 69 Ala. 555; *Davis v. Betz,* 66 Ala. 206.

HARALSON, J.—1. It is well settled that courts of equity, in dealing with transactions between persons occupying fiduciary relations towards each other, are not confined to cases in which there is any formal or techinal relations of that character, such as guardian and ward, parent and child, attorney and client, etc., but

[Cannon v. Gilmer.]

they apply the principles to all cases in which confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties, which gave the one advantage or superiority over the other, and that the burden of proving that the transaction was fair and righteous is on the one receiving or acquiring the benefit.—*Shipman v. Furniss,* 69 Ala. 556; *Bancroft v. Otis,* 91 Ala. 279; *Kyle v. Perdue,* 95 Ala. 579; *Kidd v. Williams,* 132 Ala. 140; 31 So. Rep. 458.

2. The facts as made by the bill are, that complainant was the owner and in the possession of a lot of land containing 2.22 acres on the outskirts of the city of Montgomery, which had been allotted to her as a homestead by the probate court of Montgomery county; that prior to its allotment, one William Eastley, brother of the first wife of complainant's husband, Alfred Gilmer, claimed some interest in said lot and threatened suit against complainant to recover it; that this claim was groundless, but being ignorant of the law, complainant consulted with the defendant, who advised her that in order to protect her rights in said land against the pretended claim of said Eastley, it was necessary for her to institute proceedings to have said land allotted to her as a homestead, and after this was done, she could give him a mortgage on said land, which he told her at the time would be a "bogus or false mortgage," and this would completely protect her against the claims of said Eastley; that complainant is of the negro or African race, who could neither read nor write, and who, as the proof tends to show, was about 70 years old; that said Cannon was an intelligent white man and her neighbor, in whom at that time she had great confidence, and relying upon his advice and counsel, she consented to petition said court for homestead in the land; that she did file said petition, in which matter, defendant was very active, and acted as one of the commissioners in allotting said land to complainant as a homestead; that on the 14th of January, 1899, the day after the land was allotted to her, defendant, knowing the confidence and trust complainant reposed in him, with his statement

that it was necessary in order to save her property from the claims of said Eastley, induced her to make him a mortgage on said land, which he had prepared, to secure a pretended indebtedness of $700, evidenced by a promissory note of that date for that amount, payable on the 14th of January, 1900; that defendant never paid her, nor any one for her, said $700, or any other sum; that she was not in any manner indebted to defendant, and that said note and mortgage are without any consideration whatever.

It is further averred, that on the 16th December, 1899, defendant had a deed prepared, in which it is recited that in consideration of the payment by him to her in cash of the sum of $700, she bargained, sold and conveyed to him, a certain designated part of the said lot of land above described, and by playing upon the fears of complainant as to said Eastley, induced her to sign and acknowledge the same, but that defendant never paid her the sum of $700, or any other sum, and that said deed is wholly without consideration.

The answer of defendant denies all fraud or undue influence in the procurement of said note, mortgage and deed, and sets up that they were given for the considerations therein expressed, which he paid to complainant, and were freely and voluntarily executed by her without coercion or undue influence by him.

The prayer of the bill was for the cancellation of said note, mortgage and deed, as being null and void, etc. The chancellor in the decree rendered, declared said instruments void and ordered their cancellation.

3. The evidence for the complainant tends to support the allegations of the bill, and that for defendant, the defense set up in the answer. It is voluminous, and has been fully examined. The complainant was old, and that she was under the influence and domination of defendant, in whom she trusted, scarcely admits of doubt. She was, as shown, living in a state of great poverty and destitution, and was fed, clothed and warmed—to the extent she could not supply these necessities by her own labor—largely by the charities of good people around her. This lot on which she lived, of small value,

[Harrison v. Alexander.]

was her only earthly possession. It seemed to stimulate the cupidity of defendant, and instead of advising and acting in a manner to aid her in retaining it as her only shelter, cheerless and comfortless as it was, he appears to have advised her against her interests, and to have set about to deprive her of it. He was a white man, far her superior in education, intelligence, force and station in life. His claim is based on advances to her in cash from time to time for several years, to the extent of $700, when, as appears, he was acquainted with her poverty, and well knew that she could not pay such an indebtedness. He, himself, was in narrow circumstances, and it is to be seriously doubted if he was able to make her such advances, especially when, according to his version, she was not refunding the sums loaned to her and, from every indication, never could.

The evidence, as stated, is voluminous, and it would be unprofitable to review and discuss it. We are unable to conclude that the decree rendered is not just; and the elaborate argument of counsel for defendant fails to show that it is in anywise erroneous.

Affirmed.