[Martin v. Evans.]

# Martin *v.* Evans.

*Bill to Cancel Conveyance Because of Undue Influence and Duress.*

(Decided Nov. 11, 1909. 50 South. 997.)

1. *Evidence; Parol Evidence; Dead; Invalidity.*—It is competent to introduce parol evidence to show that a conveyance was obtained by undue influence or fraud.

2. *Acknowledgment; Certificate; Effect.*—The certificate of a notary is presumptively correct and cannot be contradicted, nor can the acknowledgement itself be contradicted.

3. *Dower; Assignment; Interest.*—Before dower is assigned it is in the nature of a right of action and not an interest or estate in land.

4. *Deeds; Validity.*—Where one conveys land on the representation from the grantee that her son had embezzled funds from the grantee and caused it to be represented to her that unless she made the conveyance within two hours, the son would be prosecuted for embezzlement, and while acting under extreme distress and apparent necessity, the deed was executed, the grantor was entitled to have it set aside as having been obtained under duress and undue influence, and as being without consideration.

5. *Cancellation of Instruments; Pleading; Decree.*—Where, pending the suit, to cancel a conveyance, the respondent dies and the suit is revised as against his heirs, administrator and widow, and it appeared that there was no estate in the widow under sec. 3754, Code 1907, and there is no allegation to show that she had a dower interest, and the heirs and administrator suffer a decree pro confesso, such decree admitting all the allegations of the bill, and dispensing with proof thereof under sec. 3163, Code 1907, it was proper to enter a decree for complainant.

6. *Same; Against Whom Enforced.*—Where respondent employed a son of complainant and accused him of embezzling funds and stated to one who acted as the son's adviser, and to the son, that a prosecution would be begun unless a settlement was made, and such fact was communicated by the son and his adviser to the complainant, whereupon, complainant executed to respondent a deed to certain real estate which the respondent accepted in settlement, the respondent was the beneficiary of the wrong perpetrated on the complainant, and was responsible for the acts of complainant's son and his adviser, although they did not act as respondent's agent, and hence, cancellation could be had against respondent; nor was complainant estopped from setting up the truth of the transaction and of obtaining relief in equity.

[Martin v. Evans.]

7. *Vendor and Purchaser; Bona Fide Purchaser for Value.*—Under the facts in this case respondent was not in position to set up the claim that he was a bona fide purchaser for value without notice.

APPEAL from Mobile Chancery Court.

Heard before Hon THOMAS H. SMITH.

Suit by Mary D. Evans against Margaret Martin. From a decree in favor of complainant, defendant appeals. Affirmed.

The following is the opinion of the chancellor in the court below:

"Complainant alleges: That on the 15th day of February, 1907, her youngest son came to her in distress and stated to her that his former employer, Ed Martin, accused him of being an embezzler in a large amount. He told her that if he did not obtain a deed to her home within a few hours he would be prosecuted. That, acting under the extreme distress and what she thought the necessity of the case required, she did execute a deed to said Martin for her home, which she had accumulated by her own industry, and which was the only property that she owned. That no consideration whatever was ever paid to her. The deed states a consideration of $2,500. That this is entirely fictitious, and she received nothing whatever for the deed. That she had no advice, and acted hastily and under the extreme distress and surprise, and without due deliberation. The evidence sustains the above allegations.

"In *Holt v. Agnew,* 67 Ala. 369, it is said: 'In this case it cannot be said that there was any relation of trust and confidence existing between the parties. To the fidelity and integrity of the appellees the appellant did not commit her interest, nor did she look to them for advice or protection. They met, and by her own act, and upon her own suggestion, they were invited

into the relation of parties contracting with her, that she might obtain relief for her husband, afflicted by disease, harassed in mind because of the official default from which he apprehended the most serious and extreme consequences. Transactions with her, looking to the relief of her husband, from which she sustains detriment, and does not derive corresponding benefit, in which she parts with the property, or rights of property, and does not obtain an adequate valuable consideration, in view of her distressed condition, which was known to appellees, the plainest consideration and highest obligation of right and justice compelled a court of equity to investigate zealously and vigilantly, and to undo them, if there be any traces of undue influence from any source or of advantages taken of her condition. Fraud or imposition may not be shown. Of either of these the parties may be fully acquitted. Yet if she has acted hastily, without time and opportunity for deliberation, in the absence of disinterested advice, and without opportunity to obtain it, or if she was acting under the influence of threats of the punishment of her husband, or of extreme terror, or of apprehension of his impending death, and her motive was his relief, a court of equity must intervene and restore to her the condition in which she was when induced into the transaction. The doctrine upon which the court acts, when a party by force of circumstances is reduced to a condition in which he cannot deal upon terms of equality with another, and peculiarly subject to oppression or imposition, or to undue influence, is thus expressed by Judge Story: "As where he does not act or makes a contract when he is under duress or the influence of extreme terror, or of apprehension short of duress, or of threats. For, in cases of this sort, he has no free will, but stands in vincullis, and

the constant rule in equity is that, where a party is not a free agent and is not equal to protecting himself, the court will protect him. * * *On this account courts of equity will watch with extreme jealousy all contracts made by a party while under imprisonment, and if there is the slightest ground to suspect oppression in such cases they will set the contract aside. Circumstances, also, of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may in like manner so overcome his free agency as to justify the court in setting aside a contract made by him, on account of some oppression, or fraudulent advantage, or imposition, attending upon it."—1 Story, Eq. § 239. And so in cases of surprise, of sudden action without due deliberation, if there is great inequality of consideration in the transaction, and advantage is taken of the circumstances which mislead, confuse, or disturb the reason and judgment, the court will intervene.—1 Story, Eq. § 251. I do not understand that an acknowledgment precludes an inquiry into the manner in which a deed was executed. The certificate of the notary is presumptive evidence and cannot be contradicted, nor can the acknowledgment itself be contradicted; but that the conveyance was obtained by fraud or undue influence is open to proof, otherwise no acknowledged conveyance could ever be attacked on these grounds. As I understand the cases of *Moog v. Strang*, 69 Ala. 98, and *Miller v. Marx*, 55 Ala. 322, this is all they hold. The cases of *Moog v. Strang,* 69 Ala. 98, *Mohr v. Griffin*, 137 Ala. 466, 34 South. 378, *Pratt Land & Improvement Co. v. McClain*, 135 Ala. 452, 33 South. 185, 93 Am. St Rep. 35, and *Walker v. Nicrosi*, 135 Ala. 356, 33 South. 161, are different from this case in this: That there was a consideration paid out by the defendant against whom the relief is asked.

"In the present case complainant was paid no consideration, and Martin, the grantee in the deed, suffered no loss or detriment, and paid out no consideration, bringing these cases under the rule laid down in *Holt v. Agnew,* 67 Ala. 369, and Story's Equity, there cited. The present case seems to be a plain case of entire failure of consideration for the deed, and its being executed under great distress, and that the grantor was not in any condition to act with due deliberation, but from the influence brought to bear upon her indirectly by said Martin. The suit was brought against Ed Martin, who has since died. Upon the suggestion of his death, leave was granted to revive against his heirs and personal representatives when known. Subsequently, on motion of complainant, the suit was revived against his heirs, being his brothers and sisters, named in the motion and order of revival, and also against his administrator, and also against his widow. The heirs and administrator have allowed decrees pro confesso to be taken against them (being brought in by publication.) The widow alone is defending this suit. Having died intestate, leaving brothers and sisters, Martin's widow has no estate in the lands.—Section 3754, Code 1907. There are no allegations to show that she even has a dower or homestead interest in the lands.—Sections 3812, 3813, 3814, 4160, Code 1907; *Francis v. Sandlin,* 150 Ala. 586, 43 South. 829. 'Before dower is assigned, it is in the nature of a right of action, and not an interest or estate in lands.'—*Francis v. Sandlin,* 150 Ala. 586, 43 South. 830. So that, had I arrived at a contrary conclusion than that there was no such consideration as would sustain the deed upon the proof offered by the widow alone, yet, she having no right in the property, and the heirs and personal representatives having admitted the allegations

of the bill, the conveyance would still have to be set aside. The ruling is undisputed that a decree pro confesso admits all of the allegations of the bill and dispenses with the proof.—Section 3163 of the Code of 1907, and authorities cited there."

GREGORY L. & H. T. SMITH, for appellant.—The court erred in its entire theory as to the appellant's interest in this matter, since the appellant was the widow of the deceased respondent without any interest in the property so far as disclosed by the pleading.—1 Cyc. 115; Dan. P. & P. p. 1540. The court erred in decreeing upon the main issue that the conveyance to the original defendant was executed under such circumstances as to entitle the complainant to a cancellation thereof as against the original respondent himself. It is not sufficient for a complainant to establish a right, but the complainant must establish that right to rest upon the facts alleged in the bill.—*Cook v. Bolling*, 99 Ala. 455; *Alston v. Marshall*, 112 Ala. 641; 3 Mayf. 352. Under this view there was a fatal variance between the pleadings and the proof.—*Moog v. Strange*, 69 Ala. 98; *Pratt L. & I. Co. v. McLean*, 135 Ala. 452; *Holt v. Agnew*, 67 Ala. 372; *Moore v. Griffin*, 137 Ala. 466; *A. F. L. & M. Co. v. James*, 105 Ala. 349; *Grider v. A. F. L & M. Co.*, 99 Ala. 281. Where a deed recites a valuable consideration, such recital is binding upon parties and privies, and cannot be impeached by parol testimony.—*Goodlett v. Hansell*, 66 Ala. 151; *M. & M. R. R. Co. v. Wilkerson*, 72 Ala. 286; *Ohmer v. Boyer*, 9 Ala. 278.

FITTS & LEIGH, for appellee.—Conceding that the property was that of Ed Martin at the time of his death, his widow was not a necessary although a prop-

er party, and can have no standing in the court.— Sec. 1506, Code 1896; *Francis v. Sandlin,* 150 Ala. 583; *Weaver v. Crenshaw,* 6 Ala. 874; 14 Cyc. 925; *Saltmarsh v. Smith,* 32 Ala. 408. The conveyance was not voluntary, was induced by duress, and was not supported by any consideration.—Bacon Maxims, 18; 131 Mass. 51; 41 N. W. 727; *Holt v. Agnew,* 67 Ala. 361; *Glass v. Haygood,* 133 Ala. 494; *Hartford F. I. Co. v. Kirkpatrick,* 111 Ala. 457; *U. S. F. & G. Co. v. Charles,* 131 Ala. 658; *Folmar v. Siler,* 132 Ala. 297.

MAYFIELD, J.—This bill was filed by complainant to set aside, cancel, and annul an absolute conveyance of her home, upon the grounds that the conveyance was obtained by undue influence, that in executing it she acted under mental, if not physical, duress, and because there was no consideration to support the conveyance. The facts are briefly these:

A son of complainant, a boy about 20 years of age had been employed by one Martin, the grantee in the deed in question, for 5 or 6 years. The boy seems to have had complete charge and control of Martin's business; that is, of one line of it, to wit, the stable business, and was bookkeeper and general manager of it. The boy, for some reason which does not appear, quit the employ of Martin, and set up for himself a business of the same kind as that in which he was engaged for Martin. Neither Martin nor the boy appears to have known anything about bookkeeping, and the books of Martin's business seem to have been poorly kept. After the boy left Martin, the latter employed one Horn to check up his books and the accounts of the boy. Horn did not complete the work, but abandoned it at Martin's request. Martin then employed one Rosson, who checked up the books, who reported the boy $4,000

or $5,000 short in his accounts. There were conversations between Martin, Horn, and Rosson concerning the manner in which the books were kept, what the books showed and failed to show, and the amount of the shortage. Horn seems to have been the friend, if not the legal adviser, of the boy, and to have acted as an intermediary between him and Martin. Martin in the meantime employed an attorney in the matter, and referred the boy and Horn to his attorney for final settlement and adjustment. Martin, on one or more occasions, told Horn that, if the boy did not make settlement of his default by a given date, he (Martin) was going to prosecute him to the full extent of the law—intimating, if not saying, that the boy was criminally guilty of embezzlement and that he would put him in the penitentiary if he did not settle up the matter. Martin finally agreed to accept $2,500 in payment of the shortage and default. He declined to accept a mortgage upon the mother's home for the amount, but agreed to accept an absolute deed thereof in payment of the $2,500 and in settlement of the claim, and, further, that he would lease the place to the mother for $5 per month, and reconvey upon the payment of a certain amount. These conditions were finally agreed upon between Martin, Horn, and the boy, before the mother ever knew of the matter. Horn and the son then went to her house to see her and have her to sign the deed and lease. They explained the matter to her, and told her that the arrangement was necessary in order to keep her son from being prosecuted, and probably sent to the penitentiary, and advised her to execute the paper. She was greatly grief-stricken, but under protest, and while declaring that she did not and could not understand the matter, signed the deed

and lease, which were prepared by the attorneys of Martin. The deed recites the payment to her of $2,500; but it is conceded that nothing was paid· to her, and that the real consideration, if any, was the prevention of the prosecution of her son. It is certain that there was no consideration moving from the grantee to the grantor personally. If there was any at all from the grantee, it was the relinquishing by him of his claim against the boy. No one can read the evidence, as shown by this record, and reach any other conclusion than did the learned chancellor, which he has well expressed in his opinion; and in his conclusions and findings we concur, here directing that his opinion be set out in the report of this case.

It is insisted by counsel for appellee that there was a material variance between the allegations of the bill and the proof. We cannot assent to this insistence. The bill certainly contained equity, and the material averments were proven beyond dispute, and substantially as alleged. The most material allegations were that the deed was executed by complainant while under duress and swayed by undue influence, and this is proven beyond controversy. Martin was the beneficiary of the wrong perpetrated upon the complainant, and was certainly civilly responsible for the acts of the boy and Horn, though they were not his agents. His acts and deeds were certainly the cause or agreement which induced the boy and Horn to overpersuade the complainant to execute the deed. While Martin may not have directed them to do exactly what they did, or to say what they said to the complainant to induce her to execute the deed, he certainly agreed to accept the deed and the fruits of their acts, and said enough to them to justify them in saying and in doing what they

said and did.   Martin is certainly not in a position to set up· the claim of a bona fide purchaser for value without notice, and complainant is clearly not estopped from setting up the truth of the whole matter, and obtaining the relief to which the truth of the matter entitles her.   This, and·this only, does the decree of the chancellor award her.

No other decree than that rendered by the chancellor would have ·been proper under the pleadings and proof in this case as shown by this transcript.   There can be no doubt that the threat of Martin, respondent and grantee, to prosecute and imprison the boy, his former employe, the son of complainant, and grantor, caused such fear and terror as to overcome the will and free agency of the ·mother.   ·Her assent was coerced by this ·fear, which Martin instigated, if he did not directly incite by personal communication of the threat. He made the threat for the express purpose of having it communicated to her,· and no doubt under the belief and hope· that it would produce the effect it did produce.   Aside from allaying the, fear and grief of the mother and son, there was no consideration for the deed.   She was unquestionably overreached.   If equity cannot lend her its aid, she must lose her home withot fault on her part.

The appeal, under the circumstances, attacked the mother's affections and sympathies for her child.   It attacked the weakest point of the weakest creature. Had she not yielded to the appeal, she would have been unnatural and inhuman.   A mother, under such ·conditions, is powerless to resist the appeal.   If courts of chancery could ·not grant relief in the instant case, they would be without the most needy wards, and be deprived of the noblest purpose or object in our sys-

tem .of equity jurisprudence.—*Harris v. Carmody,* 131 Mass. 51, 41 Am. Rep. 188; *McCormick Co. v. Hamilton,* 73 Wis. 486, 41 N. W. 727; *Holt v. Agnew,* 67 Ala. 361; *Glass & Co. v. Haygood,* 133 Ala. 494, 31 South. 973; *Hartford Co. v. Kirkpatrick Co.,* 111 Ala. 457, .20 South. 651.

The decree of the chancellor is in all things affirmed. Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.