# Rogers, *et al. v.* Brightman.

*Bill to Set Aside a Contract Because of Fraud.*

(Decided June 4, 1914.  66 South. 71.)

1. *Contract; Validity; Fraud.*—The contract between a fiduciary and one towards whom he occupies that relation, must be free from any misrepresentations or concealment, and will be held void by a court of conscience if affected with undue influence or artifice.

2. *Same; Confidential Relations.*—The rule that a contract between a fiduciary and one to whom he occupies that relation must be free from imposition and concealment, applies not only where the legal relationship of trust and confidence exists between the parties, but in all cases where such relations exist as an actual fact.

3. *Same.*—Where a husband appointed certain parties executors without bond he declared in effect to his wife that such parties were, in his opinion, men on whose personal integrity she could implicitly rely, and hence, such parties occupied a confidential and fiduciary relation to the wife.

4. *Same; Burden of Proof.*—Where such a contract is attacked on the ground that the fiduciary was guilty of fraud or concealment, the burden is upon the fiduciary to show the fairness of the contract.

5. *Same; Validity; Fraud.*—The contract stated and considered and it is held that although it was prepared and executed before an attorney procured by the fiduciaries, it was presumptively fraudulent in view of the relationship between the parties thereto, the consideration therefor being grossly inadequate.

APPEAL from Lowndes Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Laura K. Brightman against E. L. and C. P. Rogers, Jr., and others. From a decree overruling the demurrer to the bill, defendants appeal. Affirmed.

Exhibit A, attached to the bill as amended, and referred to in the opinion, is as follows:

State of Alabama, Lowndes County: Know all men by these presents that for and in consideration of the tranfser to me by E. L. and C. P. Rogers, Jr., of their claim amounting to the sum of $5,400, against the estate of my deceased husband, W. T. Brightman, and also in consideration of the transfer and assignment to me by the Haigler Mercantile Company, the name under which W. T. Brightman and W. L. C. Haigler did business as partners, of its claim in the sum of $9,600, of which W. L. C. Haigler owns one-half, against the estate of my deceased husband, W. T. Brightman, and for other and like valuable consideration, I, Laura K. Brightman, do by this instrument hereby obligate and bind myself to pay off and discharge out of my personal estate those certain mortgages now owned and held by S. R. Merriweather, and N. J. Bell, executed by my said husband during his lifetime upon the following described lands, to wit

[here follows description by governmental subdivision], containing 854 acres, more or less, and known as the Holcomb place. The purpose of this agreement is to relieve the above-described land from the lien of the mortgages now held by said Merriweather & Bell. And I further obligate and bind myself upon relieving the said lien and the discharge of said lands from said mortgages to convey the said title to the said land by deed to the said E. L. and C. P. Rogers, Jr., and W. L. C. Haigler jointly. I further obligate and bind myself to secure the discharge and release of said land from the said mortgages now held by the said Merriweather and Bell within 90 days from its date. Executed under hand and seal this 29th day of October, 1909. [Signed] Laura K. Brightman. [Attested by two witnesses.]

POWELL & HAMILTON, and JOHN R. TYSON, for appellant.

RUSHTON, WILLIAMS & CRENSHAW, R. L. HARMON, and W. P. McGAUGH, for appellee.

DE GRAFFENRIED, J.—This appeal was taken from a decree of the chancery court of Lowndes county overruling the demurrer of the respondents to a bill of complaint as amended, wherein the complainant prayed that a contract which was made by her with the respondents to convey to them a plantation situated in Lowndes county to be set aside and held to be null and void because of what, in a court of conscience, is the equivalent of an actual fraud which, so the bill as amended alleges, was practiced, in the procurement of the contract, by the respondents upon the complainant. We are therefore, on this appeal,

OF ALABAMA.

[Rogers, et al. v. Brightman.]

to deal only with the allegations of the bill as amended. There are no facts, except as they are made to appear from the allegations of the bill as amended, for us to pass upon.

1. If the facts alleged in the bill are true, the complainant in our opinion, has been led by the respondents into making to them, upon a grossly inadequate consideration, at a time when the complainant, owing to the relations of trust and confidence which existed between her and the respondents, had a right to rely, and at a time when she actually relied, upon the good faith and fairness of respondents in their dealings with her, a contract to convey to them a valuable plantation in Lowndes county. If the allegations of the bill as amended correctly state the facts of the transaction, the contract should, in our opinion, be canceled and declared to be null and void.

2. The facts of this case, as they are stated in the bill as amended, are substantially as follows: Willett T. Brightman died on June 3, 1909, leaving a large landed estate which was *heavily* mortgaged. At the time of his death he left debts unsecured which were sufficient in amount to render his estate *insolvent*.

Among the unsecured creditors was the firm of E. L. & C. P. Rogers, Jr. This firm held a debt against the estate of $5,400. Another of the unsecured creditors was Haigler Mercantile Company, a partnership composed of W. L. C. Haigler and the said Willett T. Brightman, deceased. This firm held a debt against the estate for $9,600. These two debts, as will be seen, aggregated $15,000, and, owing to the insolvency of the estate, were, if the facts stated in the bill are true, of but little, if any, value. It seems that Willett T. Brightman owned two plantations, one of 1,680 acres, known as the "Tyson swamp place," and one of 854

acres, known as the "Holcombe place." He also, among other minor properties, owned a half interest in a mill property. The other half interest belonged to complainant, who is the widow of said Willett T. Brightman. The above lands were mortgaged, at the time of the death of said Willett T. Brightman, to Bell, Merriweather, and Griel Bros., to secure sums in excess of $20,000, and they were also mortgaged to complainant—whose mortgage was subordinate to that of Bell, Merriweather, and Griel Bros.—to secure an indebtedness of $10,000. We take it that the bill shows that the lands embraced in the mortgages above referred to were not worth greatly more than the $20,-000 for which Bell, Merriweather, and Griel Bros. held mortgages upon them. At any rate, we think that when the whole bill as amended is faily construed it shows that the lands were mortgaged—including the mortgage to complainant—for more than their full value, and that for the complainant to realize anything upon the mortgage indebtedness of her husband to her it was necessary for her to pay off and discharge the prior liens existing upon the land.

At the time of the death of her husband on June 3, 1909, the mother of complainant was suffering from a dangerous malady, and was then in an infirmary in the city of Montgomery. From that time until the death of the mother, which occurred on August 19, 1909, complainant was practically all of the time at the bedside of her mother, and during that period she took only an occasional trip to Lowndes county. The contract which is attached to this proceeding was executed and delivered on October 25, 1909, less than five months after the death of the husband, and only two months after the death of the mother.

The bill alleges that complainant has had but little experience in business matters; that during the period intervening between the death of the husband— owing to her grief on that account, her anxiety on account of the health of her mother, her constant attendance upon the mother's bedside, the grief which was occasioned by the death of the mother, and her worn and enfeebled condition both of mind and of body on account of her said bereavements—and the time when the said contract was executed, and for some time thereafter, she was unable to attend to business; and that she intrusted her own personal affairs growing in any way out of her connection with the husband's estate to the respondents. These facts, so the bill as amended alleges, were facts within the knowledge of the respondents.

The bill further alleges that her husband left an insurance on his life, for the benefit of his said wife, the sum of $17,000; that after his death she, while attending her sick mother, made, on July 5, 1909, a loan of $5,000 of this money to E. L. and C. P. Rogers, Jr., on their promissory note, the loan being made as a result of a conversation with said C. P. Rogers, Jr; and that on July 31, 1909, she, while still in attendance upon her sick mother, at the instance and request of said C. P. Rogers, Jr., made another loan of $3,000 of said insurance money to said E. L. and C. P. Rogers, Jr., and that the only security which she was given for this loan was a paid-up policy on the life of C. P. Rogers, Jr., payable to the deceased wife of said C. P. Rogers, Jr. The bill further alleges that when this last loan was made said C. P. Rogers, Jr., requested her to put the policy in a safety deposit vault in the bank and to take good care of same. He also

told her not to show the insurance policy to any one, and not to discuss her affairs with any one.

The bill further alleges that subsequent to her husbands' death she, at the suggestion and under the advice of the said Haigler and C. P. Rogers, Jr., expended $3,000 of her own money in repairing the mill property to which we have above referred, although she owned only a half interest in the same, and although the half interest of her husband was heavily mortgaged · as above shown.

3. In addition to the above allegations, the bill as amended shows that Willett T. Brightman left a last will and testament, and that he committed the administration of his estate into the hands of his said wife, Laura K. Brightman, and the said W. L. C. Haigler and C. P. Rogers, Jr., as the executrix and executors of his said will without bond, and that shortly after his death the will was probated and the complainant and respondents became the executrix and executors thereof, without bond. The bill as amended further shows that said W. L. C. Haigler is the husband of a sister of the said Willett T. Brightman; that he and the said Brightman, at the time of the death of said Brightman, were associated together as partners in the mercantile business; that they, for many years, had been personal friends and business associates; and that the said W. L. C. Haigler possessed the confidence and esteem of said Brightman, not only as a man of good personal character, but also as a man of good business methods and judgment. The bill as amended further shows that for many years prior to his death the said Brightman and the said C. P. Rogers, Jr., had been personal friends, and that said Brightman regarded the said Rogers, Jr., as a man of excellent personal character, of good business habits and of good

business ability. The bill as amended further shows that the complainant, Laura K. Brightman, was a woman of no business experience or judgment; that during the period intervening between the death of her husband and the execution and delivery of the contract involved in this litigation she was worn with mental depression, anxiety, and grief; that she knew but little of her husband's affairs; and that, during the period to which we have above referred, she placed herself, in so far as business matters were concerned, under the dominion of the said Rogers, Jr., and the said Haigler.

The bill as amended further alleges that: "At this time your oratrix was in feeble health and in a very depressed condition, both mentally and physically, and when she suggested to said Rogers and Haigler the condition of her health and her inability to manage the property and her inability to repay the money that it would be necessary to borrow, they, in substance, advised oratrix that they would look after and manage her affairs, and that if she would make a will appointing them executors, without bond, that they would, in case of her death, continue to look after her estate and manage her affairs and pay off the indebtedness which might be incurred in taking up said mortgages, and, in substance, said to oratrix, 'Now, if we do all of this for your, what are you going to do for us?' And, in substance, oratrix replied, 'I don't know. What do you want me to do for you. Can I set aside some piece of property for you after the debts are all paid?' And they in substance replied, 'Yes, give us the Holcombe place.' And oratrix agreed, in substance, that if they would procure the money which she did not have, to take up the mortgages above referred to and look after her affairs, or assist her in looking after

same until all the debts were paid off, or, in case of her death, that they would look after her business affairs until all of the debts were paid off, which might be incurred in procuring the property embraced in the mortgages above referred to, executed by W. T. Brightman, that she would give them the Holcombe place."

The bill as amended further alleges that the said Rogers, Jr., and Haigler stated to her that an attorney in Montgomery should be employed to advise with the executors of said estate and with her personally, and that it was her understanding that one had been so employed. The bill as amended further shows that, acting upon the suggestion of the said Haigler and Rogers, Jr., she came to Montgomery and went to the office of the attorney, where the contract, of which "Exhibit A" to the bill as amended is a copy (and which the reporter will set out), was read over to her, and that, acting upon the assumption that the attorney who prepared the paper had been employed to advise with her as to her personal matters as well as in her capacity as executrix, and acting in the light of the trust and confidence which she had reposed in said Haigler and Rogers, Jr., she signed the paper, and that, on the same occasion, she executed a last will and testament by which she made the said Rogers and Haigler her executors without bond.

The bill further shows that E. L. and C. P. Rogers, Jr., have paid to her no part of the $8,000 which they borrowed from her, and that she has brought a suit against them to collect the amount due; that Haigler and Rogers Jr., have failed to carry into effect the representations which they made to her to induce her to sign said contract, and that she has been thrown upon her own efforts and resources to protect herself against the prior mortgages on her said husband's lands, etc

4. If the allegations of the bill as amended are true, then at the time this contract was executed Mrs. Brightman reposed in Rogers and Haigler that confidence, trust, and faith which brings her, in so far as her business transactions with them at that time are concerned, within the protection of that rule of equity which declares that: "If confidence is reposed, it must be faithfully acted upon and preserved from any intermixture of imposition."

"If," says Collier, C. J., speaking for this court, in *Juzan et al. v. Toulmin*, 9 Ala. 662, 44 Am. Dec. 448, "in such a case, there is any misrepresentation or concealment of any material fact, or any just suspicion of artifice, or undue influence, courts of equity will interpose, and pronounce the transaction void, and, as far as possible, restore the parties to their original rights."

The rule which we have quoted applies not only where (the *legal* relationship of *trust and confidence* exists between two or more person. "It is not essential that any formal or technical relationship of a fiduciary character has been established between the parties. It suffices that they stand in such relation to each other that, while it continues, confidence is justifiably reposed by one, and the *influence* which naturally grows out of that confidence is possessed by the other."— *Kyle v. Perdue*, 95 Ala. 584, 585, 10 South. 104, 105; *Cannon v. Gilmer*, 135 Ala. 302, 33 South. 659.

We know of no better way for a man to be introduced to a woman's confidence, faith, and trust than for the husband of that woman to appoint that man, along with his wife, the executor, without bond, of his last will and testament.

In this case, when the husband of complainant, in executing his last will and testament, committed the settlement of his estate to his wife and to C. P. Rog-

ers, Jr., and W. L. C. Haigler, as his executrix and executors without bond, the husband, in effect, declared to his wife that her associates, in his opinion, were men on whose personal integrity and business judgment she could implicitly rely. By this act the husband indicated to her that he felt that she needed assistance in the matter of the administration of his estate, and by that act he also placed her, upon the probate of the will and the acceptance by her and them of the trusts reposed in them by the will as the executrix and executors thereof, in a position where, by reason of her sex, her bereavement, and her lack of business experience, she not only naturally, but almost out of necessity, gave her coexecutors that faith, esteem, and confidence which courts of equity protect against even a well-grounded suspicion of 'artifice or undue influence."—*Juzan et al. v. Toulmin, supra.*

The above expression, "well-grounded suspicion of artifice or undue influence," is used by us advisedly, for while, in such cases, a court of equity will not set aside a contract made by parties who occupy fiduciary relations towards each other *merely* upon the ground of *suspicion,* nevertheless, when such a contract is assailed on the grounds indicated by the party who has, as the natural sequence of the fiduciary relationship, reposed confidence and trust in the other party, then a court of equity presumes the contract to be void, and casts the burden upon the other party to show, by competent evidence, that the transaction was "fair and righteous."—*Cannon v. Gilmer, supra, Kyle v. Perdue, supra; Martin v. Evans,* 163 Ala. 657, 50 South. 997.

5. The contract, it is true, was prepared by an attorney and was read over to the complainant, before she signed it, by the attorney in his office. It is not

unusual for one party to an agreement which is prepared by an attorney to alone see the attorney and dictate the terms of the agreement. Under the allegations of the bill, there is nothing tending to the inference that the attorney who prepared the contract had at any time been consulted by the complainant, or that he knew or had any reason to suppose that the complainant, from conversations which she had previously had with Haigler and Rogers, Jr., regarded him in any way as her personal counsel or as having been selected by her to protect her personal interests. On the contrary, we think it clear from the allegations of the bill as amended that the attorney who prepared the papers had only seen Haigler and Rogers, Jr., with reference to their preparation, and that the only time he saw the complainant was when she came to his office to execute the papers which he had prepared as directed by Haigler and Rogers, Jr. While complainant was in the office of the attorney she signed her last will and testament, and by that will she appointed Haigler and Rogers, Jr., the executors of her last will and testament, without bond, a forcible testimonial, so it seems to us, that, at the moment—a part of the res gestæ of signing the contract—she reposed, to the utmost, her confidence and trust in the personal integrity, impartial fairness, and business ability and judgment of the respondents to the bill as amended.

That Mrs. Brightman has, by her bill as amended, made out a case which brings her within the doctrines which we have quoted from the authorities above cited we see no reason to doubt.

When Willett T. Brightman died he left two plantations and some other real estate heavily mortgaged to Bell, Merriweather, and Griel Bros., which, necessarily, for her own protection as a junior mortgagee,

[Rogers, et al. v. Brightman.]

the widow was forced to discharge. He left her, in insurance on his life $17,000, a sum not sufficient, but almost sufficient, to meet the demands which this situation made upon her. There was therefore open to Mrs. Brightman, immediately upon the collection of the insurance money, a natural, safe and, we may say, a necessary investment for that money. Instead of that investment we find that within two months after the death of the husband—and the insurance money was certainly not paid until some time *after* his death —this widow, upon the personal solicitation of one of her coexecutors of the will, had loaned to a mercantile company of which he was a member $8,000 of *that* money, and that, within five months after the death of her husband, she had, at the suggestion of both of her coexecutors, made to them a contract to convey to them *one* of the plantations of the husband upon a grossly inadequate consideration, and, in addition to this, had made a will wherein she had made them *her* executors *without bond*. No greater evidence of trust and confidence in Rogers, Jr., and Haigler could by her have been displayed; and that these unexplained acts carry with them that well-grounded suspicion of "artifice and undue influence" and of imposition and fraud which calls for equitable interference and relief cannot be gainsaid.

It seems to us, therefore, that the bill as amended shows that Rogers, Jr., and Haigler must show that their transactions with complainant have been fair and righteous, and that the chancellor committed no error in overruling the demurrer to the bill as amended.

The decree of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.